850 F.2d 597
 In re DISCIPLINARY ACTION, Raymond P. BOUCHER, Esq., Respondent.
Jeremey A. SIGMOND, a/k/a Jerome A. Sigmond, Plaintiff-Appellant,
v.
Philip E. BROWN; Joseph A. Berg, Benjamin B. Shearer; Paul
J. Malapira; Dennis Swanson, Marcus I. Brown; California
Chiropractic Association Health Service Foundation Peer
Review Committee, Defendants-Appellees.
 No. 86-6591.
 United States Court of Appeals,
Ninth Circuit.
 June 30, 1988.
 
 Before HALL, NOONAN and THOMPSON, Circuit Judges.
 
 ORDER
 
 1
 On October 14, 1987 this court issued an order to Raymond P. Boucher to show cause why sanctions should not be imposed on him. Boucher did not respond. We accordingly imposed sanctions. In re Boucher, 837 F.2d 869 (9th Cir.1988).
 
 
 2
 Boucher then petitioned for reconsideration and requested a hearing. As is indicated more fully below, we found his reasons for not responding to the order to show cause in timely fashion to be unpersuasive. We chose, however, sua sponte, to grant reconsideration and to give Boucher a hearing.
 
 
 3
 The hearing was held on May 5, 1988. Boucher was represented by counsel who made arguments. Boucher himself testified under oath and made arguments. In the light of this hearing and the facts stated in Boucher's petition for reconsideration we modify our order of January 21, 1988.
 
 
 4
 BOUCHER'S REASONS FOR NOT RESPONDING TO THE ORDER TO SHOW CAUSE
 
 
 5
 Boucher in his petition states that on October 12, 1987 he became lead counsel in an asbestos trial in Alameda County and participated in the case from October 12, 1987 to November 16, 1987. The implication of his statements is that he was so busy with this trial that he had no time to respond to the court's order. Boucher's petition further states that he did not receive a copy of the order from his office until November 16, 1987. The petition also states that he then asked his partner, Gilbert Purcell, to file a request for a 60-day extension of time to respond to the order.
 
 
 6
 Boucher's statements are not entirely consistent with each other. In his petition, while he says he received the copy of the order only on November 16, 1987 he also says that he then telephoned our Senior Deputy Clerk Jereldine Curtis to request "a couple of weeks extension" and that he made this telephone call on November 9. When the obvious difficulty of making a call on November 9 after November 16 was called to his attention at the hearing Boucher changed his story and said that he had telephoned Deputy Clerk Curtis on November 19. However, the docket sheet compiled by Deputy Clerk Curtis shows that in fact he had telephoned asking for an extension on November 9, 1987. When the docket sheet was drawn to his attention, Boucher agreed that the docket date must be accurate and he thereupon dated his request to his partner in terms of his telephone call to our Deputy Clerk, that is, about November 9, 1987. At this date he asked Purcell to ask for an extension and, according to Boucher, Purcell agreed to do so. Purcell told him that he had "taken care of the request." In fact Purcell had not "taken care of the request."
 
 
 7
 Moreover, Boucher states in his petition that he understood his partner had obtained a 60-day extension. If Purcell had asked for the extension promptly after Boucher requested him to do so, the extension would have commenced on or about November 9. Accordingly, Boucher should have believed that he had an extension until approximately January 8, 1988; but it is not clear why he did not file a response before the end of that period, particularly as the asbestos trial had long since ended. On being asked about this matter at the hearing, Boucher's reply was that the court's order came down before he could respond. But the court's order came down on January 21, 1988, well after the period in which Boucher should have thought he had an opportunity to respond.
 
 
 8
 In the light of these inconsistent and contradictory statements and actions we are unable to accept Boucher's excuses for failing to respond to the show cause order in a timely fashion.
 
 RECONSIDERATION
 
 9
 Although we do not accept Boucher's explanation for failing to respond to our order to show cause, we nonetheless granted his motion for reconsideration, sua sponte. We now address the merits of that motion.
 
 
 10
 Boucher's client, Dr. Jeremey Sigmond, was a chiropractor who in December 1983 brought a RICO case against individual chiropractors and their associates. In September 1984 Sigmond was ordered by the Los Angeles Superior Court to undergo regular psychiatric treatment. On January 23, 1986, while the case was pending, the state Board of Chiropractor Examiners found, after a hearing, that there was "uncontroverted psychiatric opinion evidence" that Sigmond suffered from "a long-term chronic mental illness described as 'paranoid personality disorder'." The Board revoked Sigmond's license but then stayed the revocation on condition that Sigmond undergo treatment by a psychiatrist who would report on his progress to the Board. Subsequent to our decision in this case Sigmond ran amok in a courtroom of the Superior Court of California, shot and wounded a bailiff, and was himself shot and killed.
 
 
 11
 Sigmond was scarcely a client a lawyer could uncritically trust or believe. According to Boucher's testimony at the hearing, Sigmond's explosive temper and aggressive behavior made him unwelcome to Boucher's associates. Boucher himself must have been assigned Sigmond's case shortly after he graduated from law school in 1984. The original complaint, which had been filed December 2, 1983, was signed by Federico C. Sayre and Jay D. Gould of Gould, Sayre & Chavez. During the district court action the firm representing Sigmond became Sayre, Moreno, Purcell & Boucher. With his firm of Sayre, Moreno, Purcell & Boucher, Boucher represented Sigmond throughout this appeal.
 
 
 12
 Handed an office "dog," Boucher threw himself into making something of the case. In misguided pursuit of this objective, Boucher wrote a brief for Sigmond on appeal that went beyond the bounds of proper advocacy in characterizing the factual record. Even in light of his explanations, Boucher's characterization of and the manner in which he cited to the record was overzealous and reckless.
 
 
 13
 Sigmond v. Brown was the first appeal to this court Boucher handled. He was out of his depth. In explaining his conduct to us, he admitted he had been careless. We agree. Although Boucher maintains he had a strong, good faith belief in the merits of Dr. Sigmond's case, his conduct was unbecoming a member of the bar of this court and sanctionable under Fed.R.App.P. 46(c).
 
 
 14
 We now take into account Boucher's youth and inexperience. In light of these considerations, we give Boucher the benefit of the doubt and presume that his sanctionable conduct in this case arose out of a lack of seasoned judgment rather than conscious dishonesty. Our previous order suspending Boucher from practice before this court, 837 F.2d at 871, has not yet become effective, and we hereby revoke the suspension and withdraw the last sentence of that order. In addition, we also modify that order as follows:
 
 
 15
 1. We delete numbered paragraph (2), id. at 869-70, and renumber the remaining numbered paragraphs accordingly.
 
 
 16
 2. We withdraw the first paragraph under "Analysis" of that order.
 
 
 17
 3. We add the following to the end of that order:
 
 
 18
 "Sigmond v. Brown was the first appeal to this court Boucher handled. He was out of his depth. In explaining his conduct to us, he admitted he had been careless. We agree. Although Boucher maintains he had a strong, good faith belief in the merits of Dr. Sigmond's case, his conduct was unbecoming a member of the bar of this court and sanctionable under Fed.R.App.P. 46(c). Youth does not excuse Boucher's unprofessional conduct, but, under the circumstances of this case, we decide that Boucher's youth should mitigate the penalty levied.
 
 
 19
 "Accordingly, this censure shall constitute our Rule 46(c) sanction of Boucher. Our lenity today should not be construed as an exoneration of Boucher; it is not. For the present, however, we believe that our condemnation of Boucher's conduct is adequate to effect the purposes of Rule 46(c)."